

1 | LAW OFFICE OF DUNCAN M. JAMES
2 | Duncan M. James (SB # 40505)
C. David Eyster (SB # 113115)
3 | Post Office Box 1381
445 North State Street
4 | Ukiah, CA 95482
Attorneys for Plaintiffs

E-filing

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DATEST CORPORATION, a California )    No. 09    0442
Corporation, and  JOHN INNES, a )
California resident, )
)
                         Plaintiffs, )    VERIFIED COMPLAINT FOR
)    DECLARATORY RELIEF (8 counts);
v. )    BREACH OF CONTRACT (2 counts);
)    REFORMATION; RESCISSION (2
JOHN SCOTT BREEDEN III, an Illinois )    counts); BREACH OF FIDUCIARY
resident, THOMAS SEABURY, a )    RELATIONSHIP (3 counts);
California resident, ROBERT S. ALLEN, a )    INTERFERENCE WITH ECONOMIC
California resident, DIABLO CONTROLS, )    RELATIONS (2 counts); and, UNJUST
INC., a California Corporation, and, )    ENRICHMENT
DOES 1through 50, inclusive, )
)    DEMAND FOR JURY TRIAL
)
                         Defendants. )
_____ )

Plaintiffs Datest Corporation and John Innes, for their complaint against Defendants

Diablo Controls, Incorporated, Thomas  W. Seabury, Robert S. Allen, John Scott Breeden III,

and Does I through 50, inclusive,  claim as follows:

## JURISDICTION AND VENUE

1.    This is both a federal copyright/patent action, pursuant to 28 U.S.C. § 1338(a),

and a diversity of citizenship action, pursuant to 28 U.S.C. § 1332(a)(1), with pendent state tort

- 1 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

1   and contractual claims.   The matters in controversy exceed $75,000 exclusive of interests and

2   costs.

3       2.      Venue is proper in the Northern District of California, under 28 U.S.C. §

4   1391(b)(2), as the Northern District of California is a judicial district in which a substantial part

5   of the events or omissions giving rise to the claim occurred, or a substantial part of property that

6   is the subject of the action is situated.

7   **THE PARTIES**

8       3.      Plaintiff Datest Corporation (hereinafter "DATEST") is a California corporation

9   duly organized and existing under the laws of the State of California, with its principal place of

10  business located in Mendocino County at Post Office Box 2330, Mendocino, CA 95460.

11      4.      Plaintiff JOHN INNES (hereinafter "INNES") is an individual currently residing

12  in Mendocino County, California.

13      5.      Defendant DIABLO CONTROLS, INC. (hereinafter "DIABLO"), is a

14  corporation duly organized and existing under the laws of the State of California, with its

15  principal place of business located in Alameda County at 2150 Rheem Drive, Suite E,

16  Pleasanton, CA 94588.  DIABLO was registered as a California corporation with the California

17  Secretary of State on February 28, 2000.

18      6.      Plaintiffs are informed and believe and thereupon allege that DIABLO operated

19  as a department of DATEST but never transferred its assets to DATEST.

20      7.      Plaintiffs are informed and believe and thereupon allege that Defendant John

21  Scott Breeden III (hereinafter "BREEDEN") is an individual who maintains his domicile in

22  McHenry County, Illinois.

23      8.      Plaintiffs are informed and believe and thereupon allege that Defendant Thomas

24  W. Seabury (hereinafter "SEABURY") is an individual who maintains his domicile in Nevada

25  County, California.

26

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

9.     Plaintiffs are informed and believe and thereupon allege that Defendant Robert S. Allen (hereinafter "ALLEN") is an individual who maintains his domicile in Alameda County, California.

10.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereupon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such Defendants.

11.     Plaintiffs are informed and believe and thereupon allege that at all times herein mentioned, each of the Defendants was the agent and/or employee of each of the remaining Defendants and in doing the things hereinafter alleged was acting within the scope of such agency and/or employment.

## FACTS

12.     INNES is the owner of one hundred percent (100%) of DATEST'S outstanding shares of stock.

13.     Plaintiffs are informed and believe and thereupon allege that at a time uncertain, but being prior to July 1, 1997, SEABURY was an employee of a Nevada corporation by the name of "Reno A & E" (hereinafter "RAE").  At a time uncertain but sometime in January, 1997, RAE terminated SEABURY'S employment.

14.     At a time uncertain in January, 1997, SEABURY contacted INNES and advised him that his employment with RAE had been terminated and that he was leaving Nevada and returning to the San Francisco Bay Area.

15.     Between the time SEABURY initially contacted INNES in or about January, 1997 and July 1, 1997, SEABURY and INNES had discussions about developing a line of vehicle detectors for DATEST.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

16.    In or about February 1997, INNES and SEABURY met to discuss business opportunities in the area of vehicle detector systems.  INNES told SEABURY at that meeting to return or destroy any and all materials and/or documentation in his possession that was generated at, owned by, and/or related to RAE.

17.    Thereafter, at a time uncertain but believed to be in April, 1997, SEABURY showed INNES some schematics he had drafted for various parts of a basic vehicle detector for the parking product line market.

18.    At the time of the discussions referred to in paragraphs 14 through 16, SEABURY affirmatively represented to Plaintiffs that he could develop a new product (vehicle detectors) from scratch, relying on his memory, experience, mandates of the industry, specifications adopted in the industry, and specifications mandated by governmental organizations, without reference to the work he had previously performed for other employers, including but not limited to RAE.

19.    Plaintiffs are informed and believe and thereupon allege that at the time of the discussions referred to in paragraphs 14 through 17, SEABURY had been developing vehicle detectors and other traffic control products for nearly twenty (25) years.

20.    Plaintiffs are informed and believe and thereupon allege that prior to accepting employment with DATEST, SEABURY worked as an independent contractor under the fictitious business name of DIABLO ENGINEERING (hereinafter "DATEST DBA").

21.    As a result of the discussions referred to in paragraphs 14 through 17, it was agreed by DATEST, INNES and SEABURY that:

        a.    SEABURY would be hired by DATEST as a full time employee;

        b.    SEABURY would devote his time to the development of vehicle detectors or a series of vehicle detectors for DATEST;

        c.    SEABURY would develop new vehicle detectors without infringing on any protectable interests or patent of RAE or any other company;

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

      d.     DATEST DBA'S name could be used by DATEST as it related development, manufacture and sale of vehicle detectors;

      e.     INNES and SEABURY agreed that a new corporation would be formed at a later date and that SEABURY would have an ownership interest therein; and,

      f.     All post-RAE development work done by SEABURY prior to the date of his employment with DATEST would be applied to the DATEST line of vehicle detectors and deemed developed at and by DATEST.

22.    On or about July 1, 1997, SEABURY was hired by DATEST for the express purpose of using his inventive faculties to assist in designing and developing vehicle detectors without infringing on any protectable interests or patents.

23.    SEABURY was paid a salary and provided other benefits as an employee of DATEST from the date of his initial employment in July 1997 until on or about April 4, 2004.

24.    At a time uncertain but being prior to July 14, 1997, SEABURY requested INNES hire ALLEN for the purpose of software development for DATEST.

25.    ALLEN had worked with SEABURY at the time of SEABURY'S termination of employment by RAE.

26.    At a time uncertain but being prior to July 14, 1997, INNES and ALLEN had discussions about developing software and new source code(s) (the electronic code that operates the microcontroller that ultimately operates a device) for a line of vehicle detectors for DATEST.

27.    During the discussions referred to in paragraph 25, ALLEN affirmatively represented to Plaintiffs that he had no disk and/or data containing any portion of RAE software and/or source code(s); and, that he would not need RAE software and/or source code(s) to develop new source code(s) for DATEST since he had been developing software for vehicle detectors and other traffic control products for nearly twenty (25) years. ALLEN further

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

1    assured Plaintiffs that he could develop new software and/or source code(s) by relying on his

2    education, memory, experience, and the mandates of the industry, specifications adopted in the

3    industry, and specifications mandated by governmental organizations, without reference to any

4    work he had performed at and for RAE.

5        28.    Plaintiffs are informed and believe and thereupon allege that at the time of the

6    discussions referred to in paragraphs 25 and 26, ALLEN had been developing software and new

7    source code(s) for vehicle detectors and other traffic control products for nearly twenty (25)

8    years.

9        29.    As a result of those discussions referred to in paragraphs 25 and 26, INNES

10   and ALLEN agreed that:

11           a.    ALLEN would be hired by DATEST as a full time employee;

12           b.    ALLEN would devote his time to the development of new software and

13                 source code(s) for a vehicle detector or a series of vehicle detectors for

                   DATEST; and,

14
             c.    ALLEN would develop new software and source code(s) without
15
                   infringing on any protectable interests or patent of RAE.
16
         30.    On July 14, 1997, ALLEN was hired by DATEST for the express purpose of
17
     using his inventive faculties to assist in developing new software and source code(s) for vehicle
18
     detectors without infringing on any protectable interests or patents.
19
         31.    ALLEN was paid a salary and provided other benefits as an employee of
20
     DATEST from the date of his initial employment on July 14, 1997 until on or about April 4,
21
     2004.
22
         32.    All benefits arising out of developing and perfecting vehicle detectors,
23
     supporting software, and/or source code(s) for which SEABURY and ALLEN were hired and
24
     paid accrued or should have accrued to DATEST.
25

26

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

33. It was at least an implied term of the employment of SEABURY and ALLEN that any invention or patentable interest resulting from the execution of any work performed at or on behalf of DATEST would become the property of DATEST and its subsidiaries.

34. DATEST cannot be deprived of the benefit of its bargain with SEABURY and ALLEN, and/or deprived of the benefits of SEABURY and ALLEN developing and perfecting vehicle detectors and software/source code(s) for DATEST because DATEST employed SEABURY and ALLEN to perfect the details and put their concepts into practical and marketable form.

35. Plaintiffs expended substantial time and money in developing the DATEST product line.

36. By February, 1998, the first vehicle detector model developed by SEABURY and ALLEN while employees of DATEST was being sold by DATEST.

37. SEABURY and ALLEN developed not less than eleven (11) vehicle detectors for DATEST.

38. DATEST has developed two product lines. One was commonly referred to as the "traffic" product line and the other the "access" product line.

39. DATEST products are manufactured by third parties based on the specifications and designs provided by DATEST and are distributed by DATEST and authorized licensees.

40. On or about June 15, 1998, SEABURY and ALLEN were sued by RAE in the United States District Court, State of Nevada, docket CV-N-98-00334-ECR, for copyright infringement and trade secret misappropriation for products they developed while employees at and of DATEST.

41. DATEST tendered a defense to SEABURY and ALLEN.

42. A judgment for damages and injunctive relief was rendered in favor of RAE and against SEABURY and ALLEN, in the case referred to in paragraphs 39 and 40. Said damages were paid by DATEST.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

43.   At a time uncertain in October, 2003, BREEDEN signed a "marketing royalty agreement" with DATEST, which permitted him to manufacture and sell items included in DATEST's "traffic' product line.  Pursuant to said agreement, BREEDEN was to pay royalties to DATEST.

44.   On or before April 4, 2004, DATEST sold the assets and liabilities of its testing and test engineering business to a third party unrelated to this action but retained ownership to the "traffic" and "access" product lines portions of its business for which SEABURY and ALLEN had been hired and for which BREEDEN was acting as an agent and licensee; and all patents and other intellectual or property rights.

FIRST CAUSE OF ACTION
(Declaratory Relief)

COUNT I
(DIABLO is Alter Ego of DATEST and INNES)

45.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 44.

46.   Attorney Alexander P. Myers was the original incorporator of DIABLO.

47.   On February 28, 2000, said Alexander P. Myers nominated INNES, and SEABURY, as the initial directors of the corporation.

48.   Thereafter, by "Unanimous Written Consent of the Board of Directors in Lieu of an Organizational Meeting", the Board of Directors adopted the following resolutions:

a.   "NOW, THEREFORE, BE IT RESOLVED that the number of directors of the Corporation shall be set at three (3)";

b.   "NOW, THEREFORE, BE IT RESOLVED that the following persons are elected to the offices set forth above their respective names to serve until the next annual

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

meeting of the Boards of Directors, or until their removal, resignation, or death, or until the election and qualification of their successor, whichever occurs first.:

President:  John H. Innes.

Chief Financial Officer:  John H. Innes.

Vice President:  Thomas W. Seabury.

Secretary:  John H. Innes."

c.    "RESOLVED  FURTHER  that  shares  of  common  stock  of  the Corporation  sold  are  subject  to  the  terms  and  conditions  of  the  Stock  Purchase  Agreement presented to the meeting and the form, terms and provisions of the Stock Purchase Agreement be, and hereby are, ratified and approved and each of the officers of the Corporation is hereby authorized  to  execute,  deliver  and  perform  that  Stock  Purchase  Agreement  on  behalf  of  the Corporation in substantially the same form as presented to this meeting."

49.    Article III, section 3.3 of the DIABLO Bylaws provides that shareholders shall elect the directors.  Said section provides  as follows:

"At each annual meeting of the shareholders, directors shall be elected to hold office until the next annual meeting; but if the annual meeting is not held or the directors are not elected, the directors may be elected at any special meeting of directors held for that purpose.  Each director, including a director elected to fill a vacancy, shall hold office until the expiration of the term for which elected and until a successor has been elected and qualified, except upon the death, resignation, or removal of the director."

50.    Plaintiffs are informed and believe and thereupon allege that pursuant to Article III, section 3.4 of the DIABLO Bylaws, the DIABLO Board of Directors may not appoint a director except in the case of a vacancy.

51.    Article III, section 3.4 of the DIABLO Bylaws establishes the procedure for the Board of Directors or shareholders to fill vacancies on the Board of Directors,

- 9 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

"A vacancy or vacancies in the Board of Directors shall be deemed to exist in the event of (i) the death, resignation, or removal of any director in accordance with Section 304 or Section 305 of the Code; (ii) action by the Board of Directors to declare vacant the office of a director who has been convicted of a felony or declared to be of unsound mind by a court order; (iii) an increase in the authorized number of directors; or (iv) the failure of shareholders (at a meeting for election of directors at which one (1) or more directors re elected) to elect the full authorized number of directors [....]

Except for a vacancy created by the removal of a director, vacancies on the board may be filled by approval of the Board of Directors [...]   The shareholders may elect a director at any time to fill any vacancy not filled by the directors.  Any election (other than to fill a vacancy created by removal) which is accomplished by written consent shall require the consent of a majority of the outstanding sharers entitled to vote.  A vacancy on the Board of Directors resulting from the removal of a director may be filled only by the approval of the shareholders in accordance with Section 2.8 or by the unanimous written consent of the shareholders."

52.   Pursuant to Article III, section 3.4 of the DIABLO Bylaws,

"The shareholders may elect a director at any time to fill a vacancy not filled by the directors.   Any election (other than to fill a vacancy created by removal) which is accomplished by written consent shall require the consent of a majority of the outstanding shareholders entitled to vote."

53.   INNES is, and at all times herein mentioned is and was an officer, director and shareholder of DIABLO.

54.   SEABURY is, and at all times herein mentioned is and was an officer, director and shareholder of DIABLO.

55.   ALLEN is a director and shareholder of DIABLO.

56.   As of February 28, 2000, the shares of DIABLO were authorized to be issued as follows:

| INNES | 650,000 shares (65% of the total shares authorized); |
| SEABURY | 250,000 shares (25% of the total shares authorized); and, |
| ALLEN | 100,000 shares (10% of the total shares authorized). |

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

57.     No DIABLO share certificates were ever issued, which evidenced the authorization as described in paragraph 55.

58.     No "Stock Purchase Agreement" was executed by DIABLO, INNES, SEABURY, or ALLEN, pursuant to the resolution referred to in paragraph 47(c) of this complaint, which therein confirmed the issuance of shares as set forth in paragraph 55.

59.     At all times herein mentioned beginning on or about February 28, 2000, and continuing until April 4, 2004, DIABLO was dormant and not conducting any business.

60.     Plaintiffs are informed and believe and thereupon allege that other than payments required for taxes and license fees, DIABLO had no assets, income, or liabilities, during the period from February 28, 2000 through March 31, 2004.

61.     Plaintiffs are informed and believe and thereupon allege that DIABLO filed tax returns as a Chapter S corporation during the tax years 2000 through 2003; a Chapter C corporation during the 2004 tax year; and a Chapter S corporation during the 2005 tax year.

62.     On or about April 4, 2004, DATEST transferred its "traffic" and "access" product line operations to DIABLO.

63.     As a part of the transfer of the business operation from DATEST to DIABLO, on or about April 4, 2004, DIABLO moved its physical location from 47810 Westinghouse Drive, Fremont, California to 5510 Sunol Boulevard, Pleasanton, California 94566.

64.     As a part of the transfer of the business operation from DATEST to DIABLO, on or about April 4, 2004, SEABURY and ALLEN were terminated as agents or employees of DATEST.

65.     As a part of the transfer of the business operation from DATEST to DIABLO, on or about April 4, 2004, SEABURY and ALLEN were hired as agents and employees of

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

1    DIABLO to perform the same tasks they previously performed while agents and employees of

2    DATEST.

3         66.     From February 28, 2000 to a time uncertain in April 4, 2004:

4             a.      DIABLO never issued any stock;

5             b.      No Stock Purchase Agreement was executed by DIABLO, INNES,

6                     SEABURY, and ALLEN pursuant to the resolution referred to in

7                     paragraph 47(c) of this complaint;

8             c.      DIABLO never opened a bank account under any name other than a

9                     fictitious business name;

10

11             d.      The funds used for operations and the purchase of inventory, operation,

12                     and product development were solely provided by DATEST and INNES;

13             e.      DIABLO never held title to the inventory

14             f.       The sales proceeds were deposited into the dba account for

15                     reimbursement to INNES and DATEST; and,

16             g.      DATEST employees were transacting the business of DIABLO.

17        67.     Plaintiffs are informed and believe and thereupon allege that on or about April 4,

18    2004, ceased to operate.

19        68.     At all times herein mentioned, beginning on or about April 4, 2004 and

20    continuing on through to the present, DIABLO has generated income and incurred expenses.

21        69.     At a date uncertain but prior to June 25, 2004, BREEDEN was retained as an

22    independent contractor to perform the duties of the Acting Sales Manager of DIABLO for the

23    purpose of marketing DIABLO'S "access" product line.

24

25

26

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

70. At the time BREEDEN was retained as an independent contractor to perform the duties of the Acting Sales Manager for the DIABLO "access" product line, BREEDEN owed royalties to DATEST for the "traffic" product line that he manufactured and sold under the Marketing Royalty Agreement referred to in paragraph 42 above.

71. The royalties owed by BREEDEN to DATEST pursuant to the Marketing Royalty Agreement referred to in paragraph 42 were used as an offset against compensation BREEDEN may have been entitled to receive as the Acting Sales Manager for the "access" product line of DIABLO through December 31, 2005.

72. In or about January, 2006, BREEDEN began receiving a salary from DIABLO.

73. From February 28, 2000 to a date uncertain in 2006, no DIABLO share certificates were ever issued which evidenced the authorization as described in paragraph 55.

74. From February 28, 2000 to August 10, 2005, DIABLO shareholders and the DIABLO Board of Directors failed to hold any annual or special meetings.

75. Beginning on or about April 4, 2004 through February 21, 2007, if funds generated by the sale of product were insufficient to cover DIABLO expenses, DATEST and INNES provided the additional funds necessary to keep DIABLO operational.

76. DIABLO did not issue any shares of stock until a date uncertain in 2006.

77. From February 28, 2000 until a date uncertain in 2006, DIABLO was the alter ego of DATEST and INNES.

78. From February 28, 2000 until a date uncertain in 2006, DIABLO existed merely to serve the interests of DATEST and INNES.

- 13 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

79.     Plaintiffs are informed and believe and thereupon allege that BREEDEN, SEABURY and ALLEN contend that from February 28, 2000 until the present, DIABLO was not the alter ego of DATEST and INNES.

80.     An actual controversy has arisen and now exists between INNES and Defendant concerning whether from February 28, 2000 until a date uncertain in 2006, DIABLO was the alter ego of DATEST and INNES.

81.     Plaintiffs desire and respectfully assert they are entitled to a judicial declaration by this court as to whether from February 28, 2000 to April 4, 2005, DIABLO was the alter ego of DATEST and INNES. Such a declaration is necessary and proper at this time.

COUNT II
(Nonvoting Shares of Stock)

82.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 81.

83.     On February 7, 2005, a meeting took place between INNES, SEABURY and BREEDEN. Also present at that meeting was Alexander P. Myers.

84.     At the meeting referred to in paragraph 82, INNES offered to sell 250,000 shares of DIABLO stock to DIABLO for the sum of $250, which would then be resold by DIABLO to BREEDEN, on condition that for a period of two years after the purchase BREEDEN's only voting authorization would be in the event of the sale of DIABLO.

85.     At the meeting referred to in paragraph 82, it was further agreed that as of April 4, 2005, DIABLO shares of stock would be issued as follows:

INNES         - 400,000 shares (40% of the total shares authorized);

BREEDEN       - 250,000 shares (25% of the total shares authorized);

SEABURY       - 250,000 shares (25% of the total shares authorized); and,

ALLEN         - 100,000 shares (10% of the total shares authorized).

- 14 -

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

86.   On or before August 10, 2005, a special meeting took place between INNES, SEABURY and ALLEN, as the sole directors and shareholders of DIABLO.

87.   At the meeting referred to in paragraph 85, INNES, SEABURY and ALLEN determined three (3) alternatives by which DIABLO would offer to sell BREEDEN 250,000 shares of DIABLO stock.

88.   On or about August 10, 2005, INNES had a phone conversation with BREEDEN regarding a DIABLO Board of Directors meeting of that date. During that phone conversation, INNES advised BREEDEN he could pick one of the three possible options to obtain 25% of the stock of DIABLO.

89.   After the phone conversation referred to in paragraph 87, INNES sent an e-mail to BREEDEN confirming the phone conversation and offering three (3) alternatives for BREEDEN to purchase DIABLO stock. The alternatives by which BREEDEN could purchase DIABLO stock were as follows:

"a.   Non Voting Trust - This would place into trust, 25% of the stock which would be under control of the board for a period of an additional two years. (October 2007). Effective October 2005, Breeden would be entitled to begin to receive 25% of the profits of the corporation. His only voting capability would be as relates to sale of the corporation etc. Price to be $250.00.

b.   Two year option – Effective Oct of 2005, Breeden would be able to purchase 8.33% of the stock. Effective Oct 2006, an additional 8.33% and a final 8.33% on Oct. of 2007. Voting and profit disbursements would be consistent with stock ownership. Price to be $25,000.00.

c.   Outright Purchase – Effective Oct of 2005, Breeden would be able to purchase up to 25% of the stock. (One time purchase). Voting and profit disbursements would be consistent with stock ownership. Price to be $100,000."

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

90.    At a date uncertain but being subsequent to January 1, 2006, INNES sold 250,000 shares of DIABLO common stock to DIABLO for the sum of $250 so as to effectuate the sale of DIABLO stock to BREEDEN pursuant to option (a), as set forth in paragraph 88.

91.    At the time of the sale of the stock by INNES to DIABLO referred to in paragraph 89, Plaintiffs believe that when the stock was resold by DIABLO to BREEDEN the sale of the stock to BREEDEN would be conditioned upon the DIABLO stock being placed "into trust;" "under control of the board for a period of an additional two years;" and, BREEDEN agreeing that his "only voting capability would be as relates to sale of the corporation."

92.    On a date uncertain but being subsequent to January 1, 2006, BREEDEN purchased 250,000 shares of DIABLO common stock from DIABLO for the sum of $250.

93.    At the time that BREEDEN paid DIABLO the sum of $250 for the 250,000 shares of DIABLO stock as referred to in paragraph 91, according to "Exhibit B" to the "Buy-Sell Agreement between Shareholders of Diablo Controls, Inc.," the DIABLO Board of Directors had established a value for the DIABLO stock in the amount of $1.30 per share.

94.    At the time of the sale of the DIABLO stock to BREEDEN, the fair market value of the 250,000 shares of DIABLO stock was $325,000.00.

95.    As a result of the purchase of stock by BREEDEN, the ownership of DIABLO shares of stock was as follows:

| | |
|---|---|
| INNES | 400,000 shares (40% of the total shares authorized); |
| BREEDEN | 250,000 shares (25% of the total shares authorized); |
| SEABURY | 250,000 shares (25% of the total shares authorized); and, |
| ALLEN | 100,000 shares (10% of the total shares authorized). |

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

96.     That by exercising his right to purchase 250,000 shares of DIABLO stock for the sum of $250.00, BREEDEN accepted the first of the three (3) alternatives, as more particularly set forth in paragraph 88.

97.     Pursuant to the offers to sell the DIABLO stock, as more particularly set forth in paragraphs 83 and 88 above, BREEDEN agreed that he would have no right to vote his shares of DIABLO stock until two (2) years after the date of their purchase.

98.     BREEDEN'S payment of $250.00 to DIABLO for the 250,000 shares of DIABLO stock that INNES sold to DIABLO, BREEDEN waived his right to vote said DIABLO shares of stock on non-sale of the corporation matters until two (2) years after their transfer and re-issuance to BREEDEN .

99.     Plaintiffs are informed and believe and thereupon allege that during the two (2) years following his purchase of the 250,000 shares of stock from DIABLO, BREEDEN has and continues to vote his shares of DIABLO stock on corporation matters unrelated to the sale of the corporation.

100.    Plaintiffs are informed and believe and thereupon allege that Plaintiffs are informed and believe and thereupon allege that BREEDEN, SEABURY and ALLEN contend that BREEDEN has the right to vote all of his shares of DIABLO stock on non-sale of the corporation action items.

101.    An actual controversy has arisen and now exists between INNES and Defendants concerning BREEDEN'S scope and right to vote the 250,000 shares of DIABLO stock BREEDEN previously purchased for $250.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

102.   INNES desires and is entitled to a judicial declaration by this court as to the rights of and limitations on BREEDEN to vote his shares of stock.   Such a declaration is necessary and proper at this time.

### COUNT III
(Determination as to who is Majority Shareholder)

103.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 102.

104.   Plaintiffs are informed and believe and thereupon allege that BREEDEN cannot vote the shares of stock he purchased from DIABLO until two (2) years after the date of purchase.

105.   Plaintiffs are informed and believe and thereupon allege that at the time of the filing of this complaint, there are 750,000 shares of DIABLO stock outstanding with unrestricted voting rights.

106.   Plaintiffs are informed and believe and thereupon allege that at the time of the filing of this complaint, INNES owns the majority of non-restricted voting shares of DIABLO stock and that the remaining DIABLO share holders that have unrestricted voting rights are as follows:

     INNES       - 400,000 shares (53.333% of the total voting shares);

     SEABURY  - 250,000 shares (33.333% of the total voting shares); and,

     ALLEN      - 100,000 shares (13.333% of the total voting shares).

107.   Plaintiffs contend that INNES owns the majority of non-restricted voting shares of DIABLO stock and that the remaining DIABLO share holders that have unrestricted voting rights are as specified and in the percentages as more particularly set forth in paragraph 105.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

108.    Plaintiffs are informed and believe and thereupon allege that BREEDEN, SEABURY, and ALLEN contend that INNES is not the majority shareholder in DIABLO and that the voting rights of the DIABLO share holders are as follows:

INNES          - 400,000 shares (40% of the total voting shares);

BREEDEN     - 250,000 shares (25% of the total voting shares);

SEABURY     - 250,000 shares (25% of the total voting shares); and,

ALLEN         - 100,000 shares (10% of the total voting shares).

109.    An actual controversy has arisen and now exists between Plaintiffs and Defendant concerning BREEDEN'S rights to vote his DIABLO shares of stock.

110.    Plaintiffs desire and are entitled to a judicial declaration by this court as to the rights and obligations of BREEDEN to vote his shares of stock.  Such a declaration is necessary and proper at this time.

COUNT IV
(Appointment of New Director)

111.    Plaintiffs reallege and incorporates by reference, paragraphs 1 through 110.

112.    On or about March 23, 2006, DIABLO held a special joint "Board/stockholders meeting."    Present at that meeting was INNES, SEABURY, ALLEN, and BREEDEN. SEABURY acted as secretary.

113.    Plaintiffs are informed and believe and thereupon allege that at the time of the March 23, 2006 special joint "Board/stockholders meeting," the directors of DIABLO were: INNES, SEABURY, and ALLEN.

114.    Plaintiffs are informed and believe and thereupon allege that at the March 23, 2006, special joint "Board/stockholders meeting," referred to in paragraph 110 and 111, there was:

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

a.   No election of new directors by the shareholders pursuant to the DIABLO By-laws;

b.   No appointment of a new director to fill a vacancy pursuant to the DIABLO By-laws; and,

c.   No election of new officers by the Board of Directors.

115.   Plaintiffs are informed and believe and thereupon allege that the officers of DIABLO at the time of the March 23, 2006 special joint "Board/stockholders meeting" referred to in paragraph 110 and 111 were:

President: John H. Innes.

Chief Financial Officer: John H. Innes.

Vice President: Thomas W. Seabury.

Secretary: John H. Innes."

116.   At a time uncertain but being subsequent to March 23, 2006, INNES, SEABURY and ALLEN signed an undated document entitled "Diablo Controls, Inc. Written Consent in Lieu of Meeting of Board of Directors and Shareholders." Said document provided in relevant part:

WHEREFORE, the Board of Directors determined that it is desirable to appoint an additional person to the Board of Directors of the corporation;

NOW, THEREFORE, BE IT RESOLVED, that John S. Breeden II is hereby appointed a director of the Corporation."

117.   Plaintiffs are informed and believe and thereupon allege that the Board of Directors of DIABLO was and is without any authority to appoint directors except as provided Article III, section 3.4 of the DIABLO By-laws, as more particularly set forth above in paragraph 50.

- 20 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

118.   Plaintiffs are informed and believe and thereupon allege that at the time of the appointment of BREEDEN to the DIABLO Board of Directors, the number of directors had been fixed by a resolution of the Board of Directors at three (3), as more particularly set forth in paragraph 47(a).

119.   Plaintiffs are informed and believe and thereupon allege that the appointment of BREEDEN was in excess of the authority granted by the DIABLO Articles of Incorporation and Bylaws in that a vacancy did not exist in the position of director at the time of the appointment.

120.   Plaintiffs are informed and believe and thereupon allege that the appointment of BREEDEN as a director of DIABLO was in excess of the authority granted to the directors by the DIABLO Articles of Incorporation and Bylaws.

121.   Plaintiffs are informed and believe and thereupon allege that BREEDEN contends that his appointment to the DIABLO Board of Directors was in accord with the DIABLO Articles of Incorporation and Bylaws and is therefore valid.

122.   An actual controversy has arisen and now exists between Plaintiffs and the Defendant concerning BREEDEN'S appointment to the DIABLO Board of Directors.

123.   Plaintiffs desire and are entitled to a judicial declaration by this court as to whether the appointment of BREEDEN the DIABLO Board of Directors was proper and in accord with the Articles of Incorporation and Bylaws.  Such a declaration is necessary and proper at this time.

COUNT V
(Actions of Board in Excess of Authority –
July 10, 2006 Board of Directors Meeting)

124.   Plaintiffs re-alleges and incorporates by reference paragraphs 1 through 123.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

125.   On or about July 10, 2006, the DIABLO Board of Directors held a special meeting pursuant to written notice.  Present at that meeting were the following persons who were identified as directors:  INNES, SEABURY, ALLEN, AND BREEDEN.

126.   Plaintiffs are informed and believe and thereupon allege that there was not proper notice for the Board of Directors meeting referred to in paragraph 124.

127.   Plaintiffs are informed and believe and thereupon allege that according to the minutes of the July 10, 2006, special meeting of the DIABLO Board of Directors referred to in paragraph 123, BREEDEN was elected President of DIABLO and ALLEN was elected Secretary.   BREEDEN, SEABURY and ALLEN voted in favor of the resolutions electing BREEDEN as President of the Board of Directors and Allen as Secretary of the Board of Directors.  INNES voted against said resolutions.

128.   Plaintiffs are informed and believe and thereupon allege that BREEDEN was not properly and legally elected to the DIABLO Board of Directors so he cannot serve on the board nor cast a ballot on any issue relating to DIABLO.

129.   Plaintiffs are informed and believe and thereupon allege that there was not proper notice for the election of officers.

130.   Plaintiffs are informed and believe and thereupon allege that Defendants contend that BREEDEN was properly elected to the DIABLO Board of Directors and in that capacity had the right to vote for an election of Board Officers.

131.   An actual controversy has arisen and now exists between Plaintiffs and the Defendants concerning BREEDEN'S right to serve on the DIABLO Board of Directors and in that capacity whether he has the right to vote.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

132.   Plaintiffs desire and are entitled to a judicial declaration by this court as to whether BREEDEN can serve on the DIABLO Board of Directors and be elected its President. Such a declaration is necessary and proper at this time.

COUNT VI
(Actions of Board in Excess of Authority –
February 21, 2007 Board of Directors Meeting)

133.   Plaintiffs re-allege and incorporate by reference, paragraphs 1 through 132.

134.   BREEDEN is and, at all times herein mentioned since April 4, 2004, was an agent and/or employee of DIABLO.

135.   Plaintiffs are informed and believe and thereupon allege that at all times herein mentioned beginning on or about July 10, 2006, BREEDEN has served as an officer and director of DIABLO.

136.   On or about February 21, 2007, the DIABLO Board of Directors held a special meeting. Present at the meeting was INNES, SEABURY, ALLEN and BREEDEN.

137.   INNES objected to the DIABLO Board of Directors meeting held on February 21, 2007, on the grounds that it was not properly noticed.

138.   Plaintiffs are informed and believe and thereupon allege that at the time of said meeting referred to in paragraph 134, BREEDEN had not been properly elected to the DIABLO Board of Directors.

139.   At the Board of Directors meeting referred to in paragraphs 134 and 135, INNES was terminated as DIABLO's Chief Financial Officer effective immediately; and, as Board's Vice-President effective March 15, 2007.

140.   Plaintiffs are informed and believe and thereupon allege that INNES was not properly terminated as an officer at the DIABLO Board of Directors meeting of February 21,

- 23 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

1   2007 as said meeting was not properly noticed as required by Article I, section 6 of the

2   DIABLO Bylaws; and, California *Corporations Code* § 307.

3   141.   Plaintiffs are informed and believe and thereupon allege that any action taken at

4   DIABLO's Board of Directors meeting of February 21, 2007, was not proper and is voidable in

5   that the meeting was not properly noticed as required by Article I, section 6 of the DIABLO

6   Bylaws, and California *Corporations Code* § 307.

7   142.   Plaintiffs are informed and believe and thereupon allege that Defendants contend

8   that the DIABLO Board of Directors meeting of February 21, 2007 was properly noticed and all

9   actions taken at that meeting are valid.

10  143.   An actual controversy has arisen and now exists between Plaintiffs and the

11  Defendants concerning the sufficiency of the notice for the DIABLO Board of Directors

12  meeting of February 21, 2007, and all actions taken at said meeting.

13

14  144.   Plaintiffs desire and are entitled to a judicial declaration by this court as to

15  whether the DIABLO Board of Directors meeting of February 21, 2007 was properly noticed

16  and whether the actions taken at said meeting by the DIABLO Board of Directors were valid or

17  voidable. Such a declaration is necessary and proper at this time.

18
                                    COUNT VII
19                                 (Patent Rights)

20  145.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 43.

21  146.   On or about July 1, 1997, SEABURY was hired by DATEST, as more

22  particularly set forth in paragraphs 12 through 22, and paragraphs 31 through 36.

23  147.   On or about July 14, 1997, ALLEN was hired by DATEST, as more particularly

24  set forth in paragraphs 23 through 36.

25

26

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

148.   Plaintiffs are informed and believe and thereupon allege that SEABURY and ALLEN were paid a salary and provided other benefits as employees of DATEST from the date of their initial employment in July 1997 until on or about  April 4, 2005, when they were terminated from DATEST and hired into DIABLO.

149.   Plaintiffs expended substantial time and money in developing the DATEST products and by February, 1998, the first model of a vehicle detector was being sold by DATEST. SEABURY and ALLEN developed eleven (11) models of vehicle detectors for DATEST by April 4, 2005.

150.   Plaintiffs are informed and believe and thereupon allege that all benefits arising out of developing and perfecting vehicle detectors and the supporting software for which SEABURY and ALLEN were hired and paid accrued or should have accrued to DATEST.

151.   Plaintiffs are informed and believe and thereupon allege that it was an implied term of the employment of SEABURY and ALLEN that any invention or patentable interest resulting from the execution of any work performed at or on behalf of DATEST would become the property of DATEST.

152.   Plaintiffs are informed and believe and thereupon allege that DATEST cannot be deprived of the benefits of SEABURY and ALLEN developing and perfecting vehicle detectors and software/source code(s) because DATEST employed SEABURY and ALLEN to perfect the details and put their concepts into practical and marketable form.

153.   Plaintiffs are informed and believe and thereupon allege that any patents issued to SEABURY and/or ALLEN from the date of their initial employment by DATEST in July, 1997 until their termination on April 4, 2005, are the intellectual property of DATEST.

- 25 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

154.   Plaintiffs are informed and believe and thereupon allege that any patents that are pending but not yet issued to SEABURY or ALLEN based on patent applications that were filed during their employment by DATEST from July, 1997 until their termination on April 4, 2005, are the intellectual property of DATEST.

155.   On or about March 5, 2003, a provisional application for patent, application number 60/452473, was filed in the United States Patent and Trademark Office (USPTO) for non-interfering vehicle detection developed by SEABURY and ALLEN while they were employees of and working for DATEST.

156.   On or about February 26, 2004, a formal application for patent, application number 10/787,575, was filed with the USPTO as a follow-up to the provisional application referenced in paragraph 153 herein. All funds for this application were paid for by DATEST.

157.   Plaintiffs are informed and believe and thereupon allege that on or about November 7, 2006 a Unites States Patent, number 7,132.959, was issued to Inventors Thomas Seabury (SEABURY) and Robert S. Allen (ALLEN), and assigned to DIABLO. Plaintiffs contend said patent is the property of DATEST.

158.   Plaintiffs are informed and believe and thereupon allege that any patents issued to or to be issued to SEABURY and/or ALLEN that arise out of their work at DATEST or DIABLO are the property of DATEST even though the application may have been filed and/or the patent issued after April 4, 2004.

159.   Plaintiffs are informed and believe and thereupon allege that DIABLO, SEABURY and/or ALLEN contend that they own all rights, including the patent, trademark or other registration or proprietary rights, to the vehicle detectors and the supporting software they developed while employees of DATEST and DIABLO; and that DATEST has no rights thereto.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

160.   An actual controversy has arisen and now exists between Plaintiffs and the Defendants concerning ownership of patents as aforementioned.

161.   Plaintiffs desire and are entitled to a judicial declaration by this court as to whether the patent, trademark or other registration or proprietary rights, to the vehicle detectors and the supporting software and/or source code(s) SEABURY and ALLEN developed while employees of DATEST and DIABLO are the property of DATEST.   Such a declaration is necessary and proper at this time.

### COUNT VIII
### (Trade Secrets)

162.   Plaintiffs reallege and incorporate by reference, paragraphs 1 through 43 and paragraphs 146 through 159.

163.   Plaintiffs are informed and believe and thereupon allege that DATEST developed and owns certain trade secrets, including but not limited to designs and specifications, software source code(s), hardware circuits and functions, and customer, supplier and financial information.

164.   Plaintiffs are informed and believe and thereupon allege that DATEST owns copyright registration for its proprietary supporting software and/or source code(s).

165.   Plaintiffs are informed and believe and thereupon allege that during their employment by DATEST, SEABURY, ALLEN, and BREEDEN had access to proprietary and confidential trade secrets that belong to DATEST.

166.   Plaintiffs are informed and believe and thereupon allege that the trade secret information was either marked with confidential legends, or were subject to internal precautions taken to prevent the trade secrets from becoming known to the general public.

- 27 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

167.   Plaintiffs are informed and believe and thereupon allege that SEABURY'S employment with DATEST terminated in April 4, 2005.

168.   Plaintiffs are informed and believe and thereupon allege that ALLEN'S employment with DATEST terminated in April 4, 2005.

169.   Plaintiffs are informed and believe and thereupon allege that BREEDEN's agency and/or employment with DATEST terminated in April 4, 2005.

170.   Plaintiffs are informed and believe and thereupon allege that DIABLO, SEABURY, ALLEN, and BREEDEN, have misappropriated and used DATEST's patents, intellectual property, financial, customer, and supplier trade secrets in the manufacture, distribution and sale of their detector system products.

171.   Plaintiffs are informed and believe and thereupon allege that DATEST cannot be deprived of the benefits of SEABURY and ALLEN developing and perfecting vehicle detectors and supporting software or source code(s) because DATEST employed SEABURY and ALLEN to perfect the details and put their concepts into marketable and practical form.

172.   Plaintiffs are informed and believe and thereupon allege that DIABLO, SEABURY, ALLEN, and/or BREEDEN contend that they own all rights to the vehicle detectors and the supporting software that were developed while SEABURY and ALLEN were employees of DATEST and DIABLO, including the patent, trademark or other registration or proprietary rights; and that DATEST has no rights thereto.

173.   An actual controversy has arisen and now exists between Plaintiffs and the Defendants concerning ownership of the patent, trademark or other registration or proprietary rights, to the vehicle detectors and the supporting software or source codes SEABURY and ALLEN developed while employees of DATEST and DIABLO

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

174.   Plaintiffs desire and are entitled to a judicial declaration by this court as to whether the patent, trademark or other registration or proprietary rights, to the vehicle detectors and the supporting software and/or source code(s) SEABURY and ALLEN developed while employees of DATEST are the property of DATEST.  Such a declaration is necessary and proper at this time.

SECOND CAUSE OF ACTION<br>(Breach of Contract)

(COUNT I – INNES / BREEDEN Contract)

175.   Plaintiffs reallege and incorporate by reference paragraphs: 1 through 10; and 82 through 98.

176.   On a date uncertain but being subsequent to January 1, 2006, INNES and BREEDEN entered into an oral contract whereby BREEDEN agreed to purchase 250,000 share of DIABLO stock for the sum of $250 on the condition that for a period of two years after the purchase, BREEDEN only voting capability would be as relates to the sale of the corporation.

177.   INNES is informed and believe and thereupon alleges that BREEDEN has breached the contract with INNES by voting his shares of stock at the shareholders meeting that took place on or about July 10, 2006 and February 21, 2007.

178.   By reason of BREEDEN'S breach of contract, INNES has been damaged in an amount subject to proof.

(COUNT II – DIABLO / BREEDEN Oral Contract)

179.   Plaintiffs reallege and incorporate by reference paragraphs: 1 through 10; 82 through 98; and, 176 through 178.

180.   Plaintiffs are informed and believe and thereupon allege that on a date uncertain but being subsequent to January 1, 2006, DIABLO and BREEDEN entered into an oral contract

- 29 -

whereby defendant agreed to purchase 250,000 share of DIABLO stock for the sum of $250 on the condition that "25% of the stock which would be under control of the board for a period of an [...] two years" and that BREEDEN agreed for a period of two years his only voting capability would be as relates to the sale of the corporation.

181.   Plaintiffs are informed and believe and thereupon allege that INNES is a third party beneficiary to the contract entered into by DIABLO and BREEDEN in that INNES sold the 250,000 shares of stock to DIABLO on condition that when the DIABLO stock was sold by DIABLO to BREEDEN, BREEDEN had agreed for a period of two years that BREEDEN's only voting capability would be as relates to sale of the corporation.

182.   Plaintiffs are informed and believe and thereupon allege that INNES is a third party beneficiary pursuant to California *Civil Code* § 1559, in that the agreement entered into by DIABLO and BREEDEN was for his benefit.

183.   Plaintiffs are informed and believe and thereupon allege that as a third party beneficiary to the contract entered into by INNES and DIABLO, INNES has the right to enforce the terms of said agreement.

184.   As a third party beneficiary to the contract entered into by INNES and DIABLO, INNES requests that the court declare that for the two (2) year period immediately following BREEDEN'S actual payment of $250 to DIABLO in exchange for 250,000 shares of DIABLO stock, there are 750,000 shares of DIABLO entitled to vote at shareholder meetings and that said shares are held as follows:

INNES        - 400,000 shares (53.333% of the total voting shares)

SEABURY   - 250,000 shares (33.333% of the total voting shares)

ALLEN       - 100,000 shares (13.333% of the total voting shares)

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

185.    Plaintiffs are informed and believe and thereupon allege that as a third party beneficiary to the contract entered into by INNES and DIABLO, INNES has a right to seek an order from the court invalidating any and all votes taken by DIABLO'S Board of Directors in which BREEDEN voted in support of the motion or resolution and INNES voted against the motion or resolution; and that any motion or resolution INNES voted against be reversed.

186.    As a result of the actions of BREEDEN, INNES has been damaged in an amount subject to proof.

THIRD CAUSE OF ACTION
(Reformation of DIABLO / BREEDEN Written Contract)

187.    Plaintiffs reallege and incorporate by reference paragraphs: 1 through 10; 82 through 98; and, 176 through 184.

188.    Plaintiffs are informed and believe and thereupon allege that DIABLO and BREEDEN signed a "Stock Purchase Agreement" effective January 1, 2006, which transferred 250,000 shares of DIABLO stock to BREEDEN under the terms and conditions as set forth therein.

189.    Plaintiffs are informed and believe and thereupon allege that through the mistake of INNES and/or the mistake of DIABLO, which BREEDEN at the time knew of and/or should have known of, the Stock Purchase Agreement did not truly express the intention of the parties.

190.    Plaintiffs are informed and believe and thereupon allege that the Stock Purchase Agreement between DIABLO and BREEDEN should be revised on INNES' application, as the party aggrieved, to express the intention of the parties pursuant to California *Civil Code* § 3399.

191.    Plaintiffs are informed and believe and thereupon allege that the Stock Purchase Agreement between DIABLO and BREEDEN should be revised so as to provide that:

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

  a. The contract effective date is the date BREEDEN actually made the $250 payment to DIABLO; and,

  b. For the two (2) year period immediately following BREEDEN'S actual payment of $250 to DIABLO in exchange for 250,000 shares of DIABLO stock, that BREEDEN may not vote said shares of stock except as it relates to the sale of corporation.

  192. As a result of the actions of BREEDEN, INNES has been damaged in an amount subject to proof.

THIRD CAUSE OF ACTION<br>(Rescission)

COUNT I<br>(Consent of INNES was given by mistake, fraud, or undue influence,<br>or exercised with the connivance of the other party to the agreement<br>or any other party (California *Civil Code*, § 1689, subd. (b)(1))

  193. Plaintiffs reallege and incorporate by reference paragraphs: 1 through 10; 82 through 98; and, 176 through 191.

  194. Plaintiffs are informed and believe and thereupon allege that on or about February 7, 2005, BREEDEN and INNES agreed that INNES would sell 250,000 shares of DIABLO stock to DIABLO for the sum of $250, on condition that said stock is resold to BREEDEN for the sum of $250. BREEDEN and INNES further agreed that there would be a restriction on BREEDEN'S right to vote the shares of stock to assure that INNES would not become a minority shareholder.

  195. Plaintiffs are informed and believe and thereupon allege that on or about August 10, 2005, DIABLO offered to sell BREEDEN 250,000 shares of stock as follows:

  We as board members have passed a resolution to offer you the following;

- 32 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);<br>REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);<br>INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

a.    Non Voting Trust - This would place into trust, 25% of the stock which would be under control of the board for a period of an additional two years. (October 2007). Effective October 2005, Breeden would be entitled to begin to receive 25% of the profits of the corporation. His only voting capability would be as relates to sale of the corporation etc. Price to be $250.00.

b.    Two year option – Effective Oct of 2005, Breeden would be able to purchase 8.33% of the stock.   Effective Oct 2006, an additional 8.33% and a final 8.33% on Oct. of 2007.   Voting and profit disbursements would be consistent with stock ownership. Price to be $25,000.00.

c.    Outright Purchase – Effective Oct of 2005, Breeden would be able to purchase up to 25% of the stock. (One time purchase). Voting and profit disbursements would be consistent with stock ownership. Price to be $100,000."

196.    Plaintiffs are informed and believe and thereupon allege that DIABLO never revoked this offer to sell.

197.    Plaintiffs are informed and believe and thereupon allege that on a date uncertain but being on or about April, 2006, BREEDEN purchased 250,000 shares of DIABLO stock from DIABLO for the sum of $250.

198.    Plaintiffs are informed and believe and thereupon allege that at the time BREEDEN paid DIABLO the $250.00 to purchase the 250,000 shares of DIABLO stock that had been sold to DIABLO by INNES, BREEDEN did not disclose to INNES that he did not intend to honor:

a.    His agreement with INNES that there would be a restriction on BREEDEN'S right to vote the shares of stock to assure that INNES would not become a minority shareholder; or,

b.    His agreement with DIABLO that his only voting capability would be as relates to sale of the corporation.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

199.   Plaintiffs are informed and believe and thereupon allege that BREEDEN failed to honor said agreements with INNES and DIABLO because he intended to conspire with SEABURY and ALLEN to oust INNES and take over control of DIABLO.

200.   Plaintiffs are informed and believe and thereupon allege that on or about July 10, 2006, INNES discovered BREEDEN never intended to perform his part of the agreement to purchase restricted shares of DIABLO at a significant discount.

201.   Plaintiffs are informed and believe and thereupon allege that BREEDEN breached the contract with INNES by voting his shares of stock at the shareholders meetings that took place on or about July 10, 2006 and February 21, 2007.

202.   Plaintiffs are informed and believe and thereupon allege that in furtherance of a conspiracy involving at least SEABURY and ALLEN, BREEDEN, with the assistance and/or counsel of SEABURY and ALLEN took over control of DIABLO on or about July 10, 2006.

203.   Plaintiffs are informed and believe and thereupon allege that these facts, individually or collectively, constitute grounds for rescission of the contract under mistake, fraud, or undue influence, or exercised with the connivance of the other party to the agreement or any other party as more particularly set forth in California *Civil Code*, § 1689, subd. (b)(1).

204.   INNES hereby offers to return to BREEDEN the $250.00 he paid to DIABLO upon condition that defendant returns to DIABLO the 250,000 shares of DIABLO stock. This offer of rescission is in accord with the provisions of California *Civil Code* § 1691.

205.   As a result of the actions of BREEDEN, SEABURY, and ALLEN, INNES has been damaged in an amount subject to proof.

COUNT II<br>
(Failure of Consideration (California *Civil Code* § 1689, subds. (b)(2), (4))

- 34 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);<br>
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);<br>
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

206.   Plaintiffs reallege and incorporate by reference paragraphs: 1 through 10; 82 through 98; an d, 175 through 205.

207.   At a date uncertain but being on or about April, 2006, INNES sold 250,000 shares of DIABLO stock to DIABLO.   At the time that INNES sold said shares of stock to DIABLO, he was under the mistaken belief that BREEDEN had agreed to purchase said shares of stock with a restriction that would limit his voting capability on the DIABLO stock to the sale of the corporation for a period of two (2) years after its purchase.

208.   The mistake pertains to the essence of the contract in that the restriction on the voting rights was meant to protect INNES as the majority shareholder for a period of two years after the sale of the stock.   Whereas, as a result of the transfer of the DIABLO stock to BREEDEN and DIABLO recognizing BREEDEN'S right to vote the 250,000 shares of stock, INNES was reduced to the position of being a minority shareholder, specifically that which INNES was intending to prevent by the agreement.

209.   INNES' apparent consent to transfer the stock to DIABLO was not real or freely given.

210.   Plaintiffs are informed and believe and thereupon allege that BREEDEN unfairly utilized INNES and/or DIABLO's mistaken belief in a manner which enabled him to take advantage of INNES.

211.   Plaintiffs are informed and believe and thereupon allege that the restriction on the voting rights was an essential element of the express or implied agreement between INNES and BREEDEN whereby INNES transferred the 250,000 shares of stock to DIABLO.   In the absence of such an agreement, INNES would not have sold the stock to DIABLO for resale to BREEDEN.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

212.    Plaintiffs are informed and believe and thereupon allege that these facts, individually or collectively, constitute grounds for rescission of the contract under mistake, as more particularly set forth in California *Civil Code*, § 1689, subd. (b)(2), (4).

213.    As a result of the actions of BREEDEN and DIABLO, INNES has been damaged in an amount subject to proof.

FOURTH CAUSE OF ACTION
(Breach of Fiduciary Relationship)

COUNT I
(Officers and Directors Duty to Minority Shareholder)

214.    Plaintiffs re-allege and incorporate by reference paragraphs: 1 through 10; 82 through 98; and, 176 through 213.

215.    Plaintiffs are informed and believe and thereupon allege that corporate officers and directors owe a fiduciary duty to stockholders.

216.    Plaintiffs are informed and believe and thereupon allege that controlling stockholders owe a fiduciary duty to minority stockholders.

217.    Plaintiffs are informed and believe and thereupon allege that the rule of good faith and fair dealing applies alike to corporate officers, directors, and controlling shareholders in the exercise of powers that are theirs by virtue of their position and to transactions wherein controlling shareholders seek to gain an advantage in the sale or transfer or use of their controlling block of shares.

218.    Plaintiffs are informed and believe and thereupon allege that the rule of good faith and fair dealing applies to and is intended to protect a minority shareholder in any transaction where control of the corporation is material, said rule governing controlling shareholders in this state.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

219.    Plaintiffs are informed and believe and thereupon allege that BREEDEN, SEABURY and ALLEN, as officers and directors of DIABLO breached that duty on July 10, 2006, when they conspired and/or voted to terminate INNES as DIABLO's Chief Financial Officer effective immediately, and as DIABLO's Vice-President effective March 15, 2007.

220.    Plaintiffs are informed and believe and thereupon allege that BREEDEN, SEABURY and ALLEN, as corporate officers and directors of DIABLO further breached their duties on July 10, 2006, when DIABLO refused to repurchase INNES' shares of DIABLO and instructed INNES to deliver his share certificates to DIABLO so that they may be cancelled and reissued as non-voting shares.

221.    Plaintiffs are informed and believe and thereupon allege that at the time of said Board of Directors meeting(s), neither the Articles of Incorporation nor Bylaws of DIABLO provided for or allowed the conversion of voting shares to completely non-voting shares.

222.    As a result of the actions of BREEDEN, SEABURY and ALLEN, as Directors of DIABLO, INNES has been damaged in an amount subject to proof.

COUNT II
(Majority Shareholders Duty to Minority Shareholder)

223.    Plaintiffs re-allege and incorporate by reference paragraphs: 1 through 10; 82 through 98; and, 176 through 222.

224.    Plaintiffs are informed and believe and thereupon allege that BREEDEN, SEABURY and ALLEN, as putative controlling shareholders of DIABLO, breached their duties and obligations to INNES as a putative minority shareholder on July 10, 2006, when they terminated INNES as DIABLO's Chief Financial Officer effective immediately, and as DIABLO's Vice-President effective March 15, 2007.

- 37 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

225.   Plaintiffs are informed and believe and thereupon allege that BREEDEN, SEABURY and ALLEN, as putative controlling shareholders of DIABLO further breached their duties and obligations to INNES as a putative minority shareholder on July 10, 2006, when they refused to repurchase INNES's shares and instructed INNES to deliver his share certificates to DIABLO so that they may be cancelled and reissued as non-voting shares.

226.   Plaintiffs are informed and believe and thereupon allege that, at the time of said shareholders meeting, neither the DIABLO Articles of Incorporation provided for or allowed the conversion of voting shares to completely non-voting shares.

227.   As a result of the actions of BREEDEN, SEABURY and ALLEN, as putative controlling shareholders of DIABLO, INNES has been damaged in an amount subject to proof.

COUNT III
(Manipulation of Corporate Financial Records)

228.   Plaintiffs reallege and incorporate by reference, paragraphs 1 through 98.

229.   Plaintiffs are informed and believe and thereupon allege that on a date uncertain in 2006, the Board of Directors of DIABLO established a per share value of the DIABLO stock at $1.30 per share, as more particularly set forth in paragraph 92.

230.   Plaintiffs are informed and believe and thereupon allege that at the time of the sale of the DIABLO stock to BREEDEN, the fair market value of the 250,000 shares of DIABLO stock was $325,000.00, as more particularly set forth in paragraph 93.

231.   Plaintiffs are informed and believe and thereupon allege that as of the date of the filing of this complaint that DIABLO has not issued the United State Internal Revenue Service K-1 forms to the shareholders for the year 2006.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

232.   Plaintiffs are informed and believe and thereupon allege that on or about March 6, 2007, BREEDEN, as an officer, director and shareholder of DIABLO, met with the accountant for DIABLO.

233.   Plaintiffs are informed and believe and thereupon allege that the purpose of said meeting was to discuss BREEDEN'S personal tax liability relating to his purchase of DIABLO stock for $250.00; the value of DIABLO stock for tax purposes; and whether or not the purchase of the DIABLO stock had any taxable consequences for BREEDEN.

234.   Plaintiffs are informed and believe and thereupon allege that as a result of the valuation of the shares of stock at $1.30 per share, BREEDEN has a potential taxable consequence based on the difference between the $250.00 he paid for the 250,000 shares ($0.01 per share) and $325,000.00 ($1.30 per share).

235.   Plaintiffs are informed and believe and thereupon allege that BREEDEN, as President and Chairman of the DIABLO Board of Directors, refuses to permit certain tax documents to be prepared on behalf of DIABLO, as required by the Internal Revenue Code; to wit, Forms K-1 for the 2006 taxable year.

236.   Plaintiffs are informed and believe and thereupon allege that BREEDEN is attempting to manipulate the per share price as previously set by the DIABLO Board of Directors for his own personal benefit and in order to avoid potential tax consequences to the detriment of INNES.

237.   As a result of the actions of BREEDEN, INNES has been damaged in an amount subject to proof.

FIFTH CAUSE OF ACTION
(Interference with Economic Relations)

COUNT I

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

(Interference with Contractual Relationship)

238.    Plaintiffs reallege and incorporate by reference, paragraphs 1 through 237.

239.    Plaintiffs are informed and believe and thereupon allege that an economic relationship between INNES and DIABLO existed with the probability of future economic benefit to Plaintiffs.

240.    Plaintiffs are informed and believe and thereupon allege that BREEDEN, SEABURY and ALLEN, individually and together, knew or should have known of the relationship between Plaintiffs and DIABLO.

241.    Plaintiffs are informed and believe and thereupon allege that the intentional acts on the part of BREEDEN, SEABURY and ALLEN were designed to disrupt the relationship between Plaintiffs and DIABLO.

242.    The intentional acts on the part of BREEDEN, SEABURY and ALLEN caused an actual disruption of the relationship between Plaintiffs and DIABLO; and

243.    The intentional acts on the part of BREEDEN, SEABURY and ALLEN proximately caused economic harm to Plaintiffs.

244.    As a result of the actions of BREEDEN, Plaintiffs have been damaged in an amount subject to proof.

COUNT II
(Interference with Prospective Economic Advantage)

245.    Plaintiffs reallege and incorporate by reference, paragraphs 1 through 244.

246.    Plaintiffs are informed and believe and thereupon allege that intentional acts of BREEDEN, SEABURY and ALLEN were designed to harm an economic relationship that existed between DIABLO and Plaintiffs.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

247.   Plaintiffs are informed and believe and thereupon allege that the economic relationship that existed between DIABLO and Plaintiffs contained the probability of future economic advantage for Plaintiffs.

248.   Plaintiffs are informed and believe and thereupon allege that BREEDEN, SEABURY and ALLEN knew or should have known of the economic relationship between DIABLO and Plaintiffs.

249.   Plaintiffs are informed and believe and thereupon allege that BREEDEN, SEABURY and ALLEN committed intentional and unjustified acts designed to disrupt the economic relationship between DIABLO and Plaintiffs.

250.   Plaintiffs are informed and believe and thereupon allege that the intentional acts of BREEDEN, SEABURY and ALLEN caused an actual disruption of the economic relationship between DIABLO and Plaintiffs.

251.   As a result of the actions of BREEDEN, SEABURY and ALLEN, Plaintiffs have been damaged in an amount subject to proof.

SIXTH CAUSE OF ACTION<br>(Unjust Enrichment)

252.   Plaintiffs reallege and incorporate by reference, paragraphs 1 through 251.

253.   Plaintiffs are informed and believe and thereupon allege that DIABLO, SEABURY, ALLEN, and BREEDEN are obligated to pay reasonable compensation to DATEST for the use of DATEST's:

   a.   Patents whether pending or issued;

   b.   Supporting software, hardware, and/or source code(s) developed by SEABURY and ALLEN while employees of DATEST;

   c.   Intellectual property; and

- 41 -

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

d.   Financial, customer, and supplier trade secrets for the manufacture, distribution and sale of their detector system products.

254.   Plaintiffs are informed and believe and thereupon allege that DIABLO cannot be absolved from paying reasonable compensation to DATEST for the use of DATEST's patents (whether pending or issued), supporting software, hardware, and/or source code(s) developed by SEABURY and ALLEN while employees of DATEST, or intellectual property, financial, customer, and supplier trade secrets for the manufacture, distribution and sale of their detector system products for any reason whatsoever, including but not limited to INNES having simultaneously been an officer, director, or shareholder of both DATEST and DIABLO.

255.   Plaintiffs are informed and believe and thereupon allege that DIABLO, SEABURY, ALLEN, and BREEDEN would be unjustly enriched if they were absolved from paying reasonable compensation to DATEST for the use of DATEST's patents (whether pending or issued), supporting software, hardware, and/or source codes developed by SEABURY and ALLEN while employees of DATEST, or intellectual property, financial, customer, and supplier trade secrets for the manufacture, distribution and sale of their detector system products for any reason whatsoever, including but not limited to INNES having simultaneously been an officer, director, or shareholder of both DATEST and DIABLO

256.   As a result of the actions of BREEDEN, SEABURY and ALLEN, Plaintiffs have been damaged in an amount subject to proof.

WHEREFORE, plaintiffs hereby make a DEMAND FOR JURY TRIAL, and pray for judgment against defendant as follows:

<u>As to the First Cause of Action</u> (Declaratory Relief):

1.   A declaration that:

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

Count I      - DIABLO is the alter ego of DATEST and/or INNES;

Count II      - the 250,000 shares of DIABLO stock purchased by BREEDEN are non-voting shares for two (2) years after the date of their actual purchase;

Count III      - at the time of the filing of this complaint, INNES was the owner of 53.333% of the total voting shares of DIABLO stock;

Count IV      - at the time BREEDEN was appointed to the DIABLO Board of Directors, there was no vacancy which presented an opportunity for the remaining directors to make such an appointment;

Count V      - the actions of the DIABLO Board of Directors on July 10, 2006 were in excess of their authority;

Count VI      - the actions of the DIABLO Board of Directors on February 21, 2007 were in excess of their authority;

Count VII      - all patents issued to SEABURY, ALLEN or DIABLO from July 1, 1997 to the present are the property of DATEST.

Count VIII      - patent, trademark or other registration or proprietary rights, to the vehicle detectors and the supporting software and/or source code(s) SEABURY and ALLEN developed while employees of DATEST are the property of DATEST and/or INNES.

2.      Plaintiff's costs of suit incurred herein; and

3.      Such other and further relief as may be just and proper.

As to the Second Cause of Action (Breach of Contract):

1.      Damages in an amount subject to proof;

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

2.   Plaintiff's costs of suit incurred herein; and

3.   Such other and further relief as may be just and proper.

As to the Third Cause of Action (Reformation):

1.   Reformation of the agreement between DIABLO and BREEDEN restricting BREEDEN's right to vote the DIABLO stock for a period of two (2) years after the date of its actual purchase.

2.   Damages in an amount subject to proof;

3.   Plaintiff's costs of suit incurred herein; and

4.   Such other and further relief as may be just and proper.

As to the Fourth Cause of Action (Rescission):

1.   A determination that the contract between INNES and BREEDEN is rescinded;

2.   A determination that the contract between DIABLO and BREEDEN is rescinded;

3.   Cancellation of the DIABLO share certificates issued to BREEDEN;

4.   Issuance of a new unrestricted share certificates by DIABLO to INNES for 650,000 shares;

5.   Damages in an amount subject to proof;

6.   Plaintiff's costs of suit incurred herein; and

7.   Such other and further relief as may be just and proper.

As to the Fifth Cause of Action (Breach of Fiduciary Relationship):

1.   Damages in an amount subject to proof;

2.   Plaintiff's costs of suit incurred herein; and

3.   Such other and further relief as may be just and proper.

As to the Sixth Cause of Action (Interference with Economic Relations):

VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT

1          1.    Damages an amount subject to proof;

2          2.    Plaintiff's costs of suit incurred herein; and

3          3.    Such other and further relief as may be just and proper.

4   As to the Seventh Cause of Action (Unjust Enrichment):

5          1.    Damages in an amount subject to proof;

6          2.    Plaintiff's costs of suit incurred herein; and

7          3.    Such other and further relief as may be just and proper.

Dated: January 29, 2009              Respectfully submitted,

DUNCAN M. JAMES

*C. David Eyster*

By C. DAVID EYSTER
Attorneys for Plaintiffs

**\*\* DEMAND FOR JURY TRIAL \*\***

- 45 -
VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts);
REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts);
INTERFERENCE WITH ECONOMIC RELATIONS (2 counts) and, UNJUST ENRICHMENT

## VERIFICATION

NOV 2 4 2008

I, JOHN INNES, declare:

I am a citizen of the United States, a resident of the State of California and the Plaintiff in the action herein.

I declare under penalty of perjury under the laws of the State of California and pursuant to 28 U.S.C. § 1746 that I have read the foregoing VERIFIED COMPLAINT FOR DECLARATORY RELIEF (8 counts); BREACH OF CONTRACT (2 counts); REFORMATION; RESCISSION (2 counts); BREACH OF FIDUCIARY RELATIONSHIP (3 counts); INTERFERENCE WITH ECONOMIC RELATIONS (2 counts); and, UNJUST ENRICHMENT and factual allegations therein, and know the contents thereof to be true and correct of my own knowledge, except as to those matters set forth on information and belief, and to those matters, I believe them to be true.

Executed on November 21ST, 2008, at MENDOCINO , California.

_____
JOHN INNES, individually

_____
DATEST CORPORATION
By JOHN INNES